In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3593

United States of America,

Plaintiff-Appellee,

v.

Lisa Leonard,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-CR-19--Rudolph T. Randa, Judge.

Argued February 20, 2002--Decided May 9, 2002


   Before Bauer, Ripple and Manion, Circuit
Judges.

   Bauer, Circuit Judge.  Lisa Leonard was
charged with eleven counts of tax fraud.
She entered a guilty plea to Count Eleven
and the district court granted the
government's motion to dismiss Counts One
through Ten without prejudice. At
Leonard's sentencing hearing, the
district court sentenced Leonard to 30
months in prison. This sentence was
based, in part, on "relevant conduct,"
which was initially charged in the
dismissed counts of Leonard's indictment.
Leonard appeals her sentence. We affirm
the sentence imposed by the district
court.

BACKGROUND

   In April of 1998, Lisa Leonard filed a
1997 federal income tax return with the
United States Treasury Department and
claimed wages of $11,657, purportedly
earned from a company named MOFOCO
Enterprises. A fraudulent W-2 Form
supposedly issued by MOFOCO showing
earned wages and withholding was attached
to Leonard's tax form. Based on these
claimed wages, Leonard sought a tax
refund in the amount of $4,461. Leonard
was never employed at MOFOCO Enterprises.
A representative from the company
confirmed that no wages were ever paid to

Leonard and no withholding occurred.

In all, over the course of three years, Leonard prepared a total of eleven false income tax returns. In addition to submitting her own fraudulent claim for a tax refund for 1997, Leonard assisted five others in preparing and submitting false federal income tax returns to obtain refunds to which they were not entitled for the years 1995, 1996 and 1997. These five individuals testified that Leonard approached each of them, offered to complete their returns and informed them that they were entitled to a refund for various reasons, all of which she fabricated. Two of these individuals were Leonard's neighbors and the three others were relatives of Leonard's boyfriend. Leonard met with each individual and obtained their respective social security numbers, dependant information and, if available, a W-2 Form. For each of these returns, Leonard prepared and included an altered or completely fabricated W-2 Form. In some cases, Leonard altered a legitimate W-2 Form to show additional wages and withholding; in other cases, Leonard created an entirely false W-2 Form for employment that never occurred. All of these fraudulent tax returns falsely claimed an earned income credit and a refund of fictitious tax income withheld.

At Leonard's direction, the five individuals took their completed federal income tax returns to H&R Block for filing. Leonard charged each individual a fee ranging from $50 to $1,000 for her work in preparing their returns. Payment was usually made at the time the refund check was cashed, although in some instances, Leonard required a "down payment" prior to the preparation of the return.

On February 6, 2001, a federal grand jury returned an eleven count indictment against Leonard. Counts One through Ten charged her with devising and executing a scheme to assist others in obtaining false refunds from the I.R.S. by filing false federal income tax returns in violation of 18 U.S.C. sec.sec. 287, 2. Count Eleven charged her with making a false tax claim to the I.R.S. for a refund on her own behalf. On May 21, 2001, Leonard entered a guilty plea to Count Eleven and the district court

granted the government's motion to dismiss the remaining ten counts.

The district court conducted a sentencing hearing in September of 2001. The government offered various exhibits and the testimony of witnesses to establish that Leonard's fraudulent filing of tax returns on behalf of others was "relevant conduct" for purposes of sentencing. Each of the five individuals for whom Leonard prepared returns testified at the hearing. Each confirmed that Leonard prepared his or her tax return and that they relied upon her expertise in seeking their refund. All five testified that they had actually observed Leonard prepare either their own tax returns or the tax returns of others in her apartment. Some also stated that Leonard's apartment contained papers, an adding machine, a typewriter, white-out and a notebook containing social security numbers and phone numbers.

The district court adopted the facts and sentencing calculation set forth in the Presentence Report (PSR). The court found that the government established by a preponderance of the evidence that Leonard's fraudulent filing of tax returns on behalf of others constituted "relevant conduct" to the offense in Count Eleven for sentencing purposes. Leonard's offense level was adjusted accordingly, and she was sentenced to 30 months imprisonment. This appeal followed.

DISCUSSION

A.  "Relevant Conduct" Adjustment

Leonard first argues that the district court erred when it considered the tax frauds Leonard committed on behalf of others as "relevant conduct" under section 1B1.3(a) of the Sentencing Guidelines. This conduct was initially charged in the indictment, but dismissed pursuant to the government's motion. At Leonard's sentencing hearing, the district court determined that she caused a total financial loss of $46,497. This figure was based on the loss of $4,461, which resulted from the fraud to which Leonard pled guilty, plus an additional loss of $42,036, resulting from the false income tax returns filed on behalf of the five other individuals for 1995, 1996 and 1997. Leonard argues that the district

court's calculation is flawed: that the $42,036 should not have been included in the total loss she caused because it does not constitute "relevant conduct" under the Guidelines. She asserts that this conduct is not part of the "same course of conduct" or "a common scheme or plan" as the offense to which she pled guilty in Count Eleven. We disagree.

A district court's determination that certain behavior amounts to "relevant conduct" for sentencing purposes under the Guidelines is a factual finding and will only be disturbed if clearly erroneous. United States v. Nunez, 958 F.2d 196, 198 (7th Cir. 1992). Generally, we will affirm the district court's finding of relevant conduct where "the record reveals that the district court relied on the recommendations of the PSR and carefully considered the government's theory on the relationship between the offense of conviction and the additional conduct." United States v. Patel, 131 F.3d 1195, 1204 (7th Cir. 1997).

The United States Sentencing Guidelines permit a sentencing court to consider certain "relevant conduct," with which the defendant has not been charged, in calculating a defendant's base offense level for sentencing purposes. United States v. Taylor, 272 F.3d 980, 982 (7th Cir. 2001). Pursuant to section 1B1.3(a)(2) of the Guidelines, "relevant conduct" includes any acts or omissions that were "part of the same course of conduct or common scheme or plan as the offense of conviction." Application Note 9(A) to section 1B1.3 defines "common scheme or plan" as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Further, Application Note 9(B) provides that offenses that are not part of a "common scheme or plan" may be part of the "same course of conduct" if they are "connected or sufficiently related to each other as to warrant the conclusion that they are part of a single episode, spree or ongoing series of offenses." Factors to be considered in this analysis include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. U.S. Sentencing Guidelines Manual sec. 1B1.3(a), cmt. n.

9(b).

In Leonard's case, all the financial transactions considered fall within the scope of "relevant conduct" as defined in section 1B1.3(a)(2). Although Leonard pled guilty to filing a single false tax return, the record clearly shows that she engaged in additional fraudulent acts that are most certainly relevant conduct to her offense of conviction. First, all the financial transactions in which Leonard was involved establish a "common scheme or plan," as defined in Application Note 9(A). For example, each transaction involved the filing of false tax returns seeking a refund. The I.R.S. was a common victim in every instance. See, e.g., United States v. Brierton, 165 F.3d 1133, 1137 (7th Cir. 1999) (affirming a relevant conduct enhancement because a credit union was the common victim where defendant was fraudulently altering loans and falsifying other financial records at the credit union). Finally, Leonard's modus operandi was the same for every transaction in that sheattached an altered or falsified W-2 Form showing false wages and withholdings to each return. Accordingly, the several common factors establish that Leonard's offenses are "substantially connected" and give rise to a "common scheme or plan."

In addition, Leonard's filing of her own 1997 false return and the preparation of false returns for others in previous years amounts to "the same course of conduct" pursuant to the standards set forth in Application Note 9(B). In considering the similarity of the conduct in question, a sentencing court must look to the identity of the participants and the nature, structure and location of the allegedly related transactions. United States v. Cedano-Rojas, 999 F.2d 1175, 1180 (7th Cir. 1993). As described above, a distinct similarity among all of Leonard's financial transactions is evident. These offenses occurred with a degree of regularity and temporal proximity; the false tax returns were filed in consecutive years. Leonard argues that temporal proximity is not established in her case because the other illegal conduct was at least a year before the offense to which she pled guilty. The fact that the transactions were each a year apart does not affect

the proximity; a tax return is only filed once a year. See, e.g., U.S. Sentencing Guidelines Manual sec. 1B1.3(a), cmt. n. 9(b) (stating "a defendant's failure to file tax returns in three consecutive years appropriately would be considered a part of the same course of conduct because such returns are only required at yearly intervals"). Again, we are satisfied that the prior transactions here are sufficiently related to the offense of conviction and their consideration as relevant conduct is warranted.

Leonard argues that after the first ten counts of the indictment were dismissed, all that remained was a one count indictment alleging her own fraudulent claim, "a course of conduct which lasted about one day." While this is true, the guidelines permit the sentencing court to make certain adjustments based on offenses outside the four corners of the indictment. The purpose for the "relevant conduct" adjustment in sentencing "is to allow the sentence to reflect the seriousness of an offense rather than being limited by the specific charge set out in the indictment." Taylor, 272 F.3d at 982. Accordingly, we conclude that the district court's conclusions were based on ample evidence that Leonard's prior illegal acts were "relevant conduct" to the offense of conviction.

## B. Apprendi

Leonard next argues that the district court acted contrary to the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), by enhancing Leonard's sentence based on prior tax offenses that were not proved to a jury beyond a reasonable doubt. We review a district court's interpretation of the Sentencing Guidelines de novo. United States v. Parolin, 239 F.3d 922, 928 (7th Cir. 2001).

We find Leonard's Apprendi argument to be without merit. Under the Supreme Court's holding in Apprendi, any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. However, it is well-settled in this

Circuit that Apprendi does not apply in cases where the actual sentence imposed is less severe than the statutory maximum. United States v. Watts, 256 F.3d 630, 634 (7th Cir. 2001); United States v. Jones, 245 F.3d 645, 649 (7th Cir. 2001) ("We have repeatedly held that when a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he is convicted, Apprendi is beside the point.") (internal citations omitted). Put another way, Apprendi is limited to situations in which findings affect statutory maximum punishment. United States v. Behrman, 235 F.3d 1049, 1054 (7th Cir. 2000). Where the statutory maximum is not exceeded, the sentencing court may adjust the sentence after making the appropriate findings by a preponderance of the evidence. Id.

Leonard pled guilty to one count of tax fraud, in violation of 18 U.S.C. sec.sec. 287, 2, and the statutory limit on imprisonment for this offense is five years. The district court determined by a preponderance of the evidence that Leonard was responsible for prior tax fraud and imposed a sentence of 30 months. Although Leonard's sentence was enhanced based on the prior fraudulent acts, the sentence did not exceed the statutory maximum for the offense of which she was convicted. Accordingly, Apprendi does not apply.

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to sentence Leonard to 30 months in prison.