# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1911

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBIN FERRON,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 CR 189—**Charles N. Clevert, Jr.**, *Judge.*

———————

ARGUED DECEMBER 11, 2003—DECIDED FEBRUARY 9, 2004

———————

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant Dr. Robin Ferron was charged by information and ultimately, pleaded guilty to one count of bank fraud. At sentencing, Ferron's request for a downward departure due to her claimed diminished capacity, *see* U.S.S.G. § 5K2.13, was denied. Ferron says that the district court judge committed error by refusing to consider evidence that he considered barred by the Federal Rules of Evidence. The evidence offered was the testimony of a clinical psychologist which the court held was barred by the ruling in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). It was not. Nevertheless, several things are

apparent that made this slip harmless: 1) the court *did* consider the evidence (even when disclaiming that it was not), 2) *Daubert* did not preclude such consideration—the Federal Rules of Evidence are not applicable to sentencing proceedings, and 3) the evidence contributed nothing to the process and would have been appropriately discounted in any event.

## BACKGROUND

Ferron, a medical doctor, owned and operated Pain Management Centers, S.C. (PMC) with offices in Wisconsin. In January of 2000, she obtained a $450,000 line of credit on behalf of her business. As security, the creditor, TCF Bank (TCF), a federally insured institution, received a security interest in PMC's assets and equipment. Despite this agreement, Ferron sold x-ray equipment, an asset of PMC, and deposited the proceeds of the sale in her personal banking account. Under the agreement, the funds should have been paid to TCF. This and other conduct on the part of Ferron led to federal criminal charges being levied against her by way of information. She pleaded guilty to a single count of bank fraud, in violation of 18 U.S.C. § 1344.

At the sentencing phase of the proceedings, Ferron moved for a downward departure on a number of grounds. Specifically, she claimed that a departure was appropriate for the following reasons: 1) extraordinary acceptance of responsibility, 2) the offense level overstated the seriousness of the offense itself, 3) diminished capacity, and 4) a combination of the above factors plus "other mitigating circumstances."

In support of her claim of diminished capacity, Ferron submitted the report of Dr. R. Bronson Levin, Ph.D., a clinical and forensic psychologist. From three examinations over the course of approximately one month, Dr. Levin

diagnosed Ferron with generalized anxiety disorder, dependant personality disorder, dysthymia, and drug and alcohol abuse. These findings were similar to those of Dr. Brehm's court-ordered psychological evaluation. Levin also suspected that Ferron suffered from adult attention deficit disorder (ADD). At sentencing, he testified that the defendant suffered from these conditions at the time of the offense. When asked how these diagnoses affected the defendant's offense-related conduct, he essentially said that she cannot concentrate on financial matters and therefore, must rely on others to direct and make financial decisions for her. On cross-examination Dr. Levin testified that Ferron was competent, understood the difference between right and wrong, and the difference between a lie and the truth. He also testified that she did not suffer from a compulsive disorder which would cause her to steal.

After direct and cross examination, the district court judge hearing the sentencing rejected Dr. Levin's testimony by relying on Federal Rule of Evidence 702 and *Daubert*. He did not rest here however, in that he adopted the arguments of the prosecution and stated other non-psychological reasons for refusing to depart. Ferron appeals.

## DISCUSSION

### I. Standard of Review

This court reviews a district court's refusal to grant a downward departure for abuse of discretion. 18 U.S.C. § 3743(e); *Koon v. United States*, 518 U.S. 81, 92-100 (1996). In practice, a refusal to depart is unreviewable so long as the sentencing judge understood his authority to depart and exercised his discretion in refusing to do so. *United States v. Payton*, 198 F.3d 980, 984 (7th Cir. 1999). However, a misapplication of the guidelines is an error of law and is by

its very terms, an abuse of discretion. *Koon*, 518 U.S. at 100; *United States v. Besler*, 86 F.3d 745, 747 (7th Cir. 1996).

## II.  The Error

The sentencing judge applied Federal Rule of Evidence 702 and *Daubert* to reject the testimony of Ferron's expert, (Br. of Defendant-Appellant at App. 37- 39), despite the fact that the Federal Rules of Evidence do not apply at sentencing. U.S.S.G. § 6A1.3(a). He clearly stated, "[l]et the record note that the Court is exercising its *obligation* under *Daubert* with regard to not allowing this testimony." (Tr. Vol. II at 55) (emphasis added). Later, the judge said *Daubert* and Federal Rule of Evidence 702 "*requires* the Court to be the gatekeeper when considering specialized knowledge or information that is offered in the form of opinion testimony." (Tr. Vol. II. at 96) (emphasis added). It is this mandatory language which causes concern.

It is unfortunate, but clear, that the judge in this case misapplied the law; he felt obligated to reject the testimony under *Daubert*. This is an abuse of discretion because it is an incorrect application of the sentencing guidelines. *United States v. Hunter*, 145 F.3d 946, 952 (7th Cir. 1998) (stating that under the standard of "sufficient indicia of reliability," a district court may admit evidence during sentencing that would not qualify as expert testimony under Federal Rule of Evidence 702).

## III.  Analysis

At the sentencing hearing, the Assistant United States Attorney orally argued against a downward departure. The judge adopted the argument as a reason for refusing to depart. The text of the argument, as it related to diminished capacity, is as follows.

And that leaves really the diminished capacity basis for a downward departure. And the guidelines, and recognizing at this point there is fairly little evidence to support such a departure, the guidelines indicate that a significantly reduced mental capacity means the defendant although convicted has a significantly impaired ability to understand the wrongfulness of her behavior comprising the offense or to exercise the power of reason.

And while Dr. Levin or the other materials submitted suggest some disorder, none of it, and I know the Court has rejected it, but even his testimony was that she has the ability to understand the wrongfulness. That's what that guideline's aimed at. You now, maybe we all suffer from some kind of mental difficulties or stress. The guidelines are looking for something truly extraordinary.

And to talk about this defendant with significant intelligence, with significant ability to process complex information—this isn't a case of whether she could balance her checkbook. This is when she stole by selling property she had pledged, where she attempted to defraud her former husband by diverting her income to her daughter. These are big old concepts of truth and honesty and right and wrong. And the defendant has the ability to understand that, judge.

(Tr. Vol. II at 95.)

The Government's argument centered on Ferron's ability to understand right from wrong and the truth and a lie. This is testimony that was uttered by Dr. Levin, and as far as we can determine, by no one else. Therefore, it is clear that, despite his claim or outright rejection, the judge actually considered the evidence adduced from Dr. Levin's testimony.

Beyond the procedural issue, the third paragraph of the Government's argument, as adopted by the judge, supports the finding that Ferron's life was not "so compartmentalized that she can be found to have a significantly reduced mental capacity with respect to the operation of her business and, yet, a perfectly appropriate and professional capacity as to continue her medical practice." (Tr. Vol. II at 98.) The evidence of Ferron's intelligence and her ability to process complex medical information; the fact that she knows the difference between right and wrong, the truth and a lie; the fact that she understands the concept of stealing; and that she does not suffer from some sort of compulsive disorder which causes her to steal all cut against a diminished capacity departure. Therefore, the evidence was appropriately discounted.

Ferron's own expert, Dr. Levin, testified that the defendant knew the difference between right and wrong. (Tr. Vol. II at 25-6.) A single statement which could be more damaging to Ferron's motion for a downward departure is hard to imagine. He also testified that she does not suffer from a compulsive disorder which predisposes her to the criminal conduct which formed the basis of her conviction. (Tr. Vol. II at 48-9.) Instead, he testified that she is supremely inept in dealing with financial matters. As a result of her ineptitude, she relies on others to perform these tasks for her. This argument presumably goes to show that she is incapable of "control[ing] behavior that the defendant knows is wrongful." *See* U.S.S.G. § 5K2.13. However, the argument loses much of its strength when Dr. Levin says, "She *wants* to focus on taking care of patients. She doesn't *want* to think about the business aspects. She *wants* other people to do that for her." (Tr. Vol. II at 22) (emphasis added). It seems to us that a significantly impaired ability to control behavior would be reflected not by "wants," but by needs; i.e., she *cannot* think about the business aspects. She *needs* others to do that for her.

After reviewing the arguments, record and evidence, we are left with the unmistakable conclusion that the judge found Dr. Levin's testimony to be insufficiently probative to support the departure. He said,

> Here Dr. Levin during the course of his testimony stated on several occasions that he suspected certain things were true and that he relied upon representations that were made by third parties without going to primary data to confirm whether or not information he was provided by these third parties was accurate.

> One good example of that was failure of Dr. Levin to look at any particulars concerning the consulting arrangements and financial statements of the defendant. This was very telling and was one of the bases for my decision that I could not accept as a medical fact that this defendant has a significantly reduced mental capacity as compared to others who have a similar combination of psychological disorders and personality disorders.

(Tr. Vol. II at 97.)

Despite the district court judge's claim of rejecting the testimony of Dr. Levin, the record shows that he considered it. Furthermore, the testimony failed to produce any reason for a downward departure.

AFFIRMED.

A true Copy:

     Teste:

        _____
        *Clerk of the United States Court of*
        *Appeals for the Seventh Circuit*