# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 04-1170 & 04-1243

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAUL J. DELATORRE and
FREDERICK J. DIETZ,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
Nos. 03-CR-088-S-01 & 03-CR-088-S-02—**John C. Shabaz**, *Judge.*

———————

ARGUED APRIL 4, 2005—DECIDED MAY 4, 2005

———————

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Paul Delatorre and Frederick Dietz each pleaded guilty to one count of conspiring to possess and distribute MDMA, commonly known as ecstasy, *see* 21 U.S.C. §§ 846, 841(a)(1), and were sentenced to 180 and 60 months' imprisonment respectively. Both defendants appeal their sentences, arguing that the district judge held them accountable for too much ecstasy. *See* U.S.S.G. § 1B1.3(a)(2). They also contend, relying on *United States v. Booker*, 125 S. Ct. 738 (2005), that the judge violated their constitutional rights by determining drug quantity himself and then sentencing

them as if the guidelines were mandatory. Delatorre also insists the court should have granted his motion for a downward departure under U.S.S.G. § 5K2.0. We remand both cases under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), for the limited purpose of determining whether the additional latitude *Booker*'s remedy affords the judge would have aided the defendants.

## I.

The facts are undisputed. In April 2003, Belgian customs officers intercepted a package destined for Wisconsin that contained almost 250 grams of ecstasy. Drug Enforcement Agency agents executed a controlled delivery, leading them to arrest Dietz. He confessed that Delatorre, a friend in New York, had arranged for a supplier in Amsterdam to ship him the drugs.

Dietz recounted his involvement with Delatorre's distribution activities. In May 2000, Dietz entered the United States with roughly 1.3 kilograms of ecstasy procured by Delatorre in Amsterdam. U.S. customs agents discovered the package concealed in Dietz's pants but did not arrest him, and the U.S. Attorney for the Eastern District of New York declined to prosecute. Dietz also admitted that around that time he was shipped one other package by agreement with Delatorre, though he insisted that he never opened it and thought it contained marijuana.

With Dietz's cooperation, agents arrested Delatorre, who in his own confession corroborated Dietz's account of their roles in the conspiracy. Delatorre recounted his distribution activities spanning five years—providing destinations, approximate quantities, dollar amounts, and rough dates. He also said the package Dietz recalled receiving in 2000 contained not marijuana, but 3,000 pills of ecstasy.

Based primarily on Delatorre's admissions, the probation officer recommended holding him responsible for an amount

of ecstasy equivalent to about 2,300 kilograms of marijuana, leading to a base offense level of 32. *See* U.S.S.G. §§ 2D1.1(a)(3), (c)(4), cmt. n.10. The probation officer further recommended an increase for Delatorre's managerial role, *see* U.S.S.G. § 3B1.1(c), a decrease for acceptance of responsibility, *see* U.S.S.G. §§ 3E1.1(a), (b)—yielding a total offense level of 31—and a criminal history category of V.

Delatorre objected to the proposed drug quantity, contending that his uncorroborated admissions were too imprecise to support it. He also moved for a downward departure under U.S.S.G. § 5K2.0 because his unstinting cooperation with police provided the sole basis for most of his sentence; it would be "fundamentally unfair," he ventured, to hold him accountable for illegal activities that would have remained undiscovered absent his confession.

The judge accepted the recommended guideline range, including the underlying calculation of Delatorre's relevant conduct. In light of the three acceptance points awarded Delatorre, the court denied his motion for a downward departure. The judge reasoned that Delatorre's candid confessions to police after his arrest were not so unusual as to take his case outside the heartland of similar guidelines cases. Delatorre's sentence of 180 months' imprisonment fell at the middle of the 168- to 210-month guideline range.

As to Dietz, the probation officer recommended holding him responsible for an amount of ecstasy equivalent to just over 1,100 kilograms of marijuana, leading to a base offense level of 32. *See* U.S.S.G. §§ 2D1.1(a)(3), (c)(4), cmt. n.10. The drugs seized from Dietz in the offense of conviction comprised roughly 100 kilograms of marijuana equivalent, while the airport seizure and the package he received in 2000 comprised the rest. The probation officer further recommended the "safety valve," *see* 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2, 2D1.1(b)(6), a decrease for acceptance of responsibility—yielding a total offense level of 27—and a criminal history category of I.

Dietz objected, arguing that the two transactions in 2000 were not part of his relevant conduct because they were separated by three years from the offense of conviction; during that time he moved out of state and—counsel represented—left Delatorre and drug dealing behind. The judge overruled Dietz's objection, finding that the two transactions in 2000 and the offense of conviction were all part of an ongoing conspiracy. Even though Dietz moved out of state in 2001, the judge found, he "maintained contact with Delatorre and agreed to jointly undertake the same course of conduct and scheme as he engaged in" before leaving. The judge reasoned that the similarity between the offense of conviction and the previous conduct was so great as to "trump" the "temporal concern" raised by Dietz. On the government's motion, the judge departed downward the equivalent of two levels based on Dietz's substantial assistance, *see* U.S.S.G. § 5K1.1, thus imposing a 60-month term that was below the 70- to 87-month guideline range.

## II.

Delatorre argues that the district court erred in refusing to depart downward under § 5K2.0 to recognize that by so thoroughly incriminating himself he demonstrated acceptance of responsibility to an unusual degree. In 2003, the Sentencing Commission amended § 5K2.0 to prohibit a departure on this very basis, *see* U.S.S.G. App. C, amend. 651, but the district court did not think itself bound by this amendment because it took effect after Delatorre committed the offense of conviction. Nonetheless, though the court thought it still had discretion to depart based on extraordinary acceptance of responsibility, it chose not to. That exercise of discretion is unreviewable. *E.g., United States v. Ferron*, 357 F.3d 722, 724 (7th Cir. 2004).

Both defendants contend that the district court erred in determining the amount of drugs involved in their relevant

conduct. Drug quantity and whether uncharged offenses are relevant conduct are questions of fact, which before *Booker* we reviewed for clear error, *e.g.*, *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004), and still do, *see United States v. Parra*, 402 F.3d 752, 762-63 (7th Cir. 2005).

Delatorre argues that his confession was not a proper basis for establishing drug quantity because it lacked details—dates, last names, and precise quantities—that were never established by corroborating evidence. This seems an odd argument coming from a defendant who insists that the very same confession was so good that it should merit a departure for extraordinary acceptance of responsibility. Regardless, the missing details were irrelevant because Delatorre's account of his drug trafficking put him squarely in the middle of the range of weights that would yield exactly the same offense level; Delatorre approximated the amount of ecstasy he distributed at a level equivalent to 2,300 kilograms of marijuana, and the offense level would have been exactly the same as long as the marijuana equivalent was at least 1,000 kilograms. Moreover, we fail to see why Delatorre's confession would be unreliable just because it is incomplete; a defendant's "admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case." *United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002) (citing *United States v. Broce*, 488 U.S. 563, 570 (1989)).

Dietz argues that the court erred in concluding that the two drug transactions in 2000 were part of his relevant conduct. The earlier transactions, he says, were not part of the same course of conduct because almost three years passed before he was caught engaging in the drug deal underlying his conviction. During the intervening years—we are told by counsel—Dietz "voluntarily abandoned the course of conduct in which he had been involved with Delatorre."

What's missing, of course, is any *evidence* to back counsel's representation; Dietz never testified at sentencing or

offered evidence of any kind from which the district court might have concluded that he took a hiatus from drug trafficking after the transactions in 2000. *See United States v. Sykes*, 357 F.3d 672, 675 (7th Cir. 2004); *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) (stating that counsel's representations are not evidence). What Dietz really means, then, is that the district court should have inferred that his drug dealing with Delatorre was put on hold for almost three years. It makes no difference.

With respect to drug offenses, U.S.S.G. § 1B1.3(a)(2) provides that all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction" should be deemed "relevant conduct" by the sentencing court. *United States v. Sumner*, 325 F.3d 884, 889 (7th Cir. 2003). Application Note 9(A) to § 1B1.3 defines "common scheme or plan" as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Further, Application Note 9(B) provides that offenses which are not part of a "common scheme or plan" may still arise from the "same course of conduct" if they are "connected or sufficiently related to each other as to warrant the conclusion that they are part of a single episode, spree or ongoing series of offenses."

We need not consider whether the district court properly concluded that Dietz's 2000 offenses and his offense of conviction were part of the same course of conduct even despite the near three-year gap between them. This conclusion gives us pause, but ultimately does not matter because the offenses are substantially connected by multiple common factors; all three transactions involved Dietz, Delatorre, and a common supplier in Amsterdam working together to smuggle ecstasy into the United States for distribution. Under the guidelines any one of these common factors

would suffice to make the three transactions part of a common scheme or plan. *See* U.S.S.G. § 1B1.3, cmt. n.9(A); *United States v. Leonard*, 289 F.3d 984, 987-88 (7th Cir. 2002); *United States v. Zehm*, 217 F.3d 506, 511-12 (7th Cir. 2000). *See also United States v. Shonubi*, 998 F.2d 84, 89 (2d Cir. 1993); *United States v. Lawrence*, 915 F.2d 402, 407 (8th Cir. 1990); *United States v. Duran*, 15 F.3d 131, 134 n.4 (9th Cir. 1994). Thus, even if Dietz were correct in asserting that his 2000 transactions were not part of the same course of conduct as the offense of conviction, they are still relevant conduct because they were executed as part of a common scheme or plan.

Finally, Dietz and Delatorre both argue under *Booker* that the judge committed constitutional error when he increased their offense levels on the basis of his own determination of drug quantity, and then applied the guidelines as mandatory. They have forfeited this argument, however, because neither challenged the constitutionality of his sentence in the district court. *See Paladino*, 401 F.3d at 481.

Since nothing in the record suggests whether the district court would have imposed the same sentences even with the additional latitude afforded by the remedial holding of *Booker*, we agree with the government that a limited remand under *Paladino* is appropriate. Accordingly, though we reject all of the guideline arguments raised by Dietz and Delatorre, we remand both cases for the limited purpose of soliciting the sentencing court's view about the probable result of ordering resentencing. *See Paladino*, 401 F.3d at 483-84.

**A true Copy:**

**Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-4-05