UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued May 4, 2006
Decided June 12, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-3319

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | No. 05-CR-23-C |
| MICHAEL G. ABEAR, *Defendant-Appellant.* | Barbara B. Crabb, *Chief Judge.* |

### O R D E R

Michael Abear pleaded guilty, pursuant to a written plea agreement, to knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture or substance containing cocaine, 21 U.S.C. § 841(a)(1).  The court sentenced him to 140 months' imprisonment and Abear appeals, challenging the calculation of the quantity of drugs he distributed and his criminal history category. We affirm.

Abear's troubles began with a car crash on December 23, 2004.  After Abear intentionally caused the multi-vehicle accident—with his girlfriend and 2-year-old son in the car—police arrested him for reckless endangerment.  A subsequent search of his vehicle uncovered 16.9 grams of marijuana and 325.84 grams of cocaine.  Abear was released and, undeterred by his predicament, sold 111.25 grams of cocaine to an undercover informant on February 9, 2005, received payment for

56.7 grams of cocaine previously provided by him to another individual cooperating with police, and sold an additional 996.1 grams on February 15, 2005. During the February 9 transaction, Abear also told the informant that he had sold 18 ounces (510.29 grams) of cocaine a week for six months.

Abear was charged with possessing with intent to distribute more than 500 grams of cocaine. After he pleaded guilty, a probation officer prepared a Presentence Report (PSR), holding Abear accountable for selling 13,737 grams of cocaine (325.84 + 111.25 + 56.7 + 996.1 + (510.29 x 24) = 13,737). His relevant drug conduct placed Abear at a base offense level of 32, which was adjusted to 29 because he accepted responsibility for his criminal conduct. The probation officer also assigned him a criminal history category of V, based in part on two points for a 1994 conviction for theft and false representation, and two points for a 1997 conviction for operating a vehicle while intoxicated and possessing THC (the principal active chemical in marijuana).

Abear objected to the PSR on two grounds relevant to this appeal. First, he challenged the use of his 1994[1] and 1997 convictions because, he argued, they were obtained in violation of his Sixth Amendment right to counsel. According to Abear, the waivers of counsel he executed in those cases were not knowing and voluntary because the court failed to advise him of the nature of the charges and the maximum and minimum penalties he faced. Next, he challenged the use of his statement that he sold 510 grams of cocaine a week for six months, arguing that it was an exaggeration intended to prove his ability to procure the 996 grams he sold on February 15. To support his argument Abear suggested that his indebtedness and modest lifestyle were inconsistent with the sale of approximately $340,000 of cocaine. The district court acknowledged his objections, rejected them, and after considering the factors described in 18 U.S.C. § 3553(a), sentenced him to 140 months' imprisonment (the bottom of his 140 to 175 month guidelines range).

Here, Abear reasserts the arguments he made at sentencing. He argues that the district court erred by using his statement that he sold more than 12 kilograms of cocaine over a sixth-month period to calculate his relevant conduct and by increasing his criminal history score based on two convictions allegedly obtained in violation of the Sixth Amendment.

---

[1] Abear was initially sentenced to probation in 1994, but his probation was revoked in October 1996. He argues that the Sixth Amendment violation occurred during the 1996 probation revocation hearing, which resulted in a 60-day term of imprisonment.

We review a district court's finding that uncharged conduct increased a defendant's relevant conduct calculation for clear error. *See United States v. Hawk*, 434 F.3d 959, 962 (7th Cir. 2006); *United States v. Delatorre*, 406 F.3d 863, 866 (7th Cir. 2005). Though Abear argues that it was unreasonable for the district court to consider his allegedly boastful statement that he had sold more than 12 kilograms of cocaine in the six months before his arrest, he has not undermined the reliability of his statement, *United States v. Cross*, 430 F.3d 406, 410-11 (7th Cir. 2005). The district court acknowledged that "Mr. Abear may very well have been boasting," but the court went on to explain that his ability to procure almost one kilogram of cocaine in one week, combined with the 325 grams he possessed at the time of his arrest for reckless endangerment, indicated that he was "operating at a high level." Moreover, the PSR also reported that an informant "recalled that the defendant sold two ounces of cocaine per week from December 1993 through July 2004." Abear maintains that his lifestyle was inconsistent with that of a prolific drug dealer, but that alone is insufficient to overcome the district court's legitimate view of the evidence. *See United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005). Abear proposes nothing more than a basis to second-guess the sentencing judge, and thus his claim fails. *Id.*

Abear next argues that the court erred by including two convictions in his criminal history score that, according to him, were obtained in violation of the Sixth Amendment. Abear argues, based on his 1996 probation revocation hearing transcript and 1997 plea hearing transcript, that the state court judges failed to advise him of the maximum sentence he faced and to fully explain the benefits of counsel.

We review *de novo* a district court's legal determination that a defendant's prior convictions comported with the protections of the Sixth Amendment. *See United States v. Joy*, 192 F.3d 761, 770 (7th Cir. 1999). A defendant's criminal history score may not be increased by prior convictions obtained in violation of the Constitution. *See* U.S.S.G. § 4A1.2, comment. (n.6); 21 U.S.C. § 851; *United States v. Belanger*, 936 F.2d 916, 918 (7th Cir. 1991). A defendant, however, may waive his Sixth Amendment right to counsel. *See United States v. Dahler*, 171 F.3d 441, 443 (7th Cir. 1999). For a waiver to be knowing and voluntary, a trial court must inform a defendant "of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Iowa v. Tovar*, 541 U.S. 77, 81 (2004); *see also Speights v. Frank*, 361 F.3d 962, 965 (7th Cir. 2004) ("It is enough, *Tovar* held, if the accused knows of his right to counsel and the plea itself is voluntary.").

The transcripts of Abear's 1996 probation revocation hearing and 1997 plea hearing refute his allegations that the state trial courts did not provide him the information necessary for a knowing and voluntary waiver of counsel. We begin

with the 1996 probation revocation.  Abear asked to proceed without an attorney, stating: "I know everything that, you know, I have coming.  I know I have like 136 days in right now and that my probation officer recommended six months."  He then agreed to serve seven months (the lowest term sought by the state) if he could be "granted Huber" (a reference to Wisconsin's law allowing for prisoner work release programs, *see Olson v. Tyler*, 771 F.2d 277, 279 n.1 (7th Cir. 1985)).  The court, after the colloquy established the term that Abear would serve if sentenced that day, advised him of his right to have counsel at the public's expense.  Relying principally on *Tovar*, Abear now complains that this exchange violated the Sixth Amendment because the court did not advise him of his sentencing range, but Abear knew more than his range.  He was advised of his actual sentence before consenting to proceed without counsel.  Thus *Tovar* does not provide a basis upon which to invalidate the use of this conviction to increase his criminal history score.

Turning to Abear's 1997 plea hearing, the court began by reciting the plea agreement, which provided for two 60-month consecutive terms with work release privileges.  The court then advised him of the constitutional rights he would forego by entering into the agreement, including the right to counsel at the public's expense.  Abear acknowledged that he understood his rights and that he wished to enter into the plea agreement.  He did, according to the transcript, reverse the meanings of consecutive and concurrent, but the court gave him the opportunity to proceed to trial once the misunderstanding became evident.  Abear, though, asked to proceed because "we're already this far."

Abear now argues that the court did not notify him of his right to have counsel advise him regarding whether to accept the plea agreement (as opposed to have counsel at trial if he rejected the agreement) and that he would have benefitted from counsel's assistance because he initially misunderstood the plea agreement's terms.  The trial court's statements at the plea hearing did not, however, imply that the right to counsel was only a trial right and, regardless, Abear misinterprets the trial court's obligation under *Tovar*.  We have observed:

> The Supreme Court has never held that waivers of counsel at any stage of the proceedings other than trial require such a give-and-take between the accused and someone trying to educate him about counsel's benefits—and in *Tovar* the Court held that the Constitution does not require warnings along these lines when the accused wants to plead guilty without legal assistance.

*Speights*, 361 F.3d at 965.  The state court's recitation of Abear's rights and its willingness to allow him to revoke his waiver of counsel both demonstrate an adherence to the Sixth Amendment.  Moreover, even if counsel could have negotiated a plea for concurrent sentences, the 60-day sentence that Abear initially

thought he received would still have resulted in two criminal history points for purposes of the sentence he now challenges; the consecutive, as opposed to concurrent, sentences did not increase his category. *See* U.S.S.G. § 4A1.1(b). Thus, the district court properly used this conviction to increase Abear's criminal history score.

AFFIRMED.