In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1870

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DARYL RAMONE WILSON, SR.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 CR 30031—**William D. Stiehl**, *Judge.*

---

ARGUED JANUARY 5, 2007—DECIDED SEPTEMBER 18, 2007

---

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* The district court sentenced Daryl Wilson to 180 months' imprisonment after he pleaded guilty to possessing 488 grams of cocaine with intent to distribute. Wilson's advisory sentencing guidelines range reflected enhancements for obstruction of justice and relevant conduct, as well as criminal history enhancements for committing the present offense while on supervised release and within two years of his release from federal prison in 1998. Wilson attacks these enhancements on two grounds. First, he claims they are the product of unconstitutional judicial factfinding. Second, he argues the district court erroneously concluded that more than 5 kilograms of cocaine was attributable to

him as relevant conduct and that he obstructed justice in the course of attempting to flee federal agents.

We have repeatedly rejected Wilson's first argument and do so again here. We also find no error in the district court's specific application of the guidelines. The record establishes that the 488-gram cocaine sale that formed the basis for the charged offense was merely the latest in a continuous series of large cocaine deals Wilson participated in since his release from federal prison in 1998. These deals, which easily totaled well over 5 kilograms, occurred monthly (sometimes twice a month), involved the same cast of characters and a common accomplice, and all took place in the St. Louis area. Thus, the district court did not err in attributing at least 5 kilograms of cocaine to Wilson as relevant conduct or in applying the criminal history enhancements. Finally, the court properly applied the obstruction enhancement because Wilson's vehicular movements upon being confronted by federal agents were sufficient to constitute "flight" as that term is defined by the applicable guideline.

## I.  Background

On February 13, 2004, a confidential informant told federal agents that Daryl Wilson was about to make a large cocaine sale in a gas station parking lot in St. Clair County, Illinois. The agents staked out the gas station on the lookout for Wilson's car, a black Pontiac. When a black Pontiac pulled into an adjacent parking lot, several agents in uniform approached the car to investigate. One agent parked his van behind the Pontiac and walked toward the driver's window. The driver of the Pontiac, later identified as Wilson, began to pull forward as if to leave but stopped when the car of a second agent pulled up and blocked his path. The second agent drew his weapon and pointed it at Wilson, who responded by shifting his car

into reverse and backing up a few feet. The car's backward lurch caused the first agent, who was alongside the driver's side of the Pontiac, to fear for his own safety and draw his weapon. This episode forms the basis for the sentencing guidelines enhancement Wilson received for obstructing justice under U.S.S.G. § 3C1.2.

After ordering Wilson out of his car, the agents looked in the backseat and found 488 grams of cocaine. Later that day Drug Enforcement Agency ("DEA") agents interviewed Wilson, who admitted possessing the 488 grams of cocaine with intent to deliver. In addition, Wilson told the agents that since June 2003, he had purchased at least 1.125 kilograms of cocaine from a dealer named "Mike." Wilson said that he also sold cocaine to various customers, including at least 1 kilogram to Manfred McGee. McGee, who was already cooperating with the DEA, had previously told investigators that Wilson obtained half-kilogram packages of cocaine from a dealer named Bill Cooper at least twice a week (McGee brokered these deals for a $2000 fee).

Later that day, a confidential informant confirmed that since Wilson's release from federal prison in 1998, Wilson regularly obtained at least 1 to 2 kilograms of cocaine per month from Cooper. After Wilson's arrest, two other men admitted purchasing a total of 765 grams of cocaine from Wilson. Together with Wilson's admissions during the interview, these witness statements led the district court to conclude under U.S.S.G. § 2D1.1(c) that more than 5 kilograms of cocaine was attributable to Wilson as relevant conduct for sentencing purposes. The jump from 488 grams to more than 5 kilograms resulted in an 8-level increase in Wilson's base offense level, which increased from 24 to 32. Because his 2-level downward adjustment for acceptance of responsibility was offset by his 2-level obstruction adjustment, 32 was also Wilson's total offense level.

Wilson's prior cocaine dealing also affected the computation of his criminal history category. Based on Wilson's confession and the foregoing witness statements, the district court found that Wilson had been "in the business . . . of dealing in cocaine" since before 2003. The district court's treatment of Wilson's prior drug dealing as relevant conduct essentially folded it into the present offense for criminal history purposes. U.S.S.G. § 4A1.1 cmt. nn.4 & 5 (2005). Consequently, the court determined Wilson committed the offense within two years of his release from prison in 1998 and while on supervised release (which expired in June 2003), which resulted in a 3-point criminal history enhancement under U.S.S.G. § 4A1.1(d)-(e). The Category III criminal history, when combined with Wilson's offense level of 32, yielded an advisory guidelines range of 151 to 188 months. The court overruled Wilson's objections to the guidelines enhancements and imposed a sentence of 180 months.

## II. Discussion

Wilson asks us to reduce his sentence to 57 months. He maintains he should not have received the relevant conduct, obstruction of justice, or criminal history enhancements, and that his guidelines range should only reflect the 488 grams of cocaine he pleaded guilty to possessing. He identifies that range as 45 to 57 months, but believes 57 months is appropriate in light of the district court's decision to sentence him at the high end of the advisory range. In support of his position, Wilson first makes a legal argument: that the guidelines enhancements are unconstitutional under *Apprendi*[1] and its progeny because they are premised upon conduct

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

neither admitted by him nor found by a jury. He also makes the factual claim that the evidence does not support the district court's application of the guidelines enhancements.

Wilson's request that we "resentence" him to 57 months is improper; the choice of sentence is for the district court, not the court of appeals. Wilson's constitutional argument is "frivolous . . . and it ignores the effect that *Booker* had on federal sentencing." *United States v. White*, 472 F.3d 458, 464 (7th Cir. 2006). We have repeatedly rejected it, reminding counsel that the constitutionality of judicial factfinding under the guidelines was resolved when the Supreme Court rendered the guidelines advisory in the remedial opinion in *United States v. Booker*, 543 U.S. 220, 233-34 (2005). *White*, 472 F.3d at 464; *see also United States v. Owens*, 441 F.3d 486, 490 (7th Cir. 2006); *United States v. Robinson*, 435 F.3d 699, 701-02 (7th Cir. 2006); *United States v. Bryant*, 420 F.3d 652, 656 (7th Cir. 2005); *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005).

We review the district court's application of the guidelines and its underlying factual findings for clear error. *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007). A finding that a defendant's relevant conduct includes uncharged drug quantities is a factual determination entitled to our deference "unless we have a definite and firm conviction that a mistake has been made." *United States v. Fudge*, 325 F.3d 910, 920 (7th Cir. 2003). Nevertheless, because uncharged drug quantities can add months or years (over eight years in Wilson's case) to a defendant's advisory guidelines range, the evidence relied upon by the district court at sentencing must bear sufficient indicia of reliability. *See United States v. Acosta*, 85 F.3d 275, 292 (7th Cir. 1996). In Wilson's case, there must be reliable evidence to support the district court's

findings that (1) Wilson possessed at least 5 kilograms of cocaine, and (2) that the uncharged transactions were properly deemed relevant conduct, i.e., that under U.S.S.G. § 1B1.3(a)(2), they were "part of the same course of conduct or common scheme or plan" as Wilson's offense of conviction—possession of 488 grams with intent to distribute on February 13, 2004. *See id.* at 279.

The district court did not commit clear error in finding Wilson possessed more than 5 kilograms of cocaine. Wilson himself admitted possessing at least 1.613 kilograms (the 488 grams he pleaded to plus the 1.125 kilograms he admitted purchasing from "Mike"). Two other witnesses admitted purchasing at least 765 additional grams from Wilson, bringing the total to roughly 2.4 kilograms. Together with (1) Wilson's admission that he had been purchasing additional quantities for resale from "Mike" since June 2003, (2) McGee's statement that Wilson made half-kilogram purchases from Cooper at least twice a week, and (3) the confidential informant's confirmation that Wilson had been purchasing 1 to 2 kilograms per month from Cooper since his release from prison in 1998, reliable evidence supports the finding that Wilson possessed at least 5 kilograms of cocaine with intent to distribute.

That the court had to estimate the drug quantity beyond the 2.4 kilograms specifically accounted for is immaterial. *See United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006) ("In determining relevant conduct, 'the district court is entitled to estimate drug quantity using testimony about the frequency of dealing and the amount dealt over a specified period of time.'" (quoting *United States v. Noble*, 246 F.3d 946, 952 (7th Cir. 2001))). Nor does it matter, as Wilson complains in his brief, that the drug quantity finding was partially based on the "assertions of criminals quoted in police reports furnished to the probation officer." Reliable drug quantity evidence need

not come directly from sworn witnesses at sentencing. It may also come from the presentence report provided the report is itself based on reliable witness statements; convicted felons and confidential informants are not *categorically* unreliable, as Wilson appears to suggest. *See id.* Wilson gives no other reason for discrediting the statements of the witnesses contained in the presentence report and testified to at sentencing by the DEA agent who took them. The evidence was sufficient to support the district court's drug quantity finding.[2]

Whether Wilson's possession of those 5 kilograms of cocaine was relevant conduct requires somewhat more comment. The relevant conduct "aggregation" rule, *see* U.S.S.G. §§ 1B1.3(a)(2), 2D1.1, is a powerful prosecutorial tool. The offense level for a relatively minor drug crime may be dramatically increased when uncharged drug quantities introduced at sentencing are aggregated. *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005). This is a logical outgrowth of the "real offense" philosophy embodied in the guidelines, *see* U.S.S.G. § 1A1.1 cmt. n.1, but we have previously stated that we will carefully scrutinize uncharged relevant drug conduct to ensure it bears "the necessary relation to the convicted offense." *United States v. Bacallao*, 149 F.3d 717, 719, 721 (7th Cir. 1998) (quoting *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir. 1991)); *see also Ortiz*, 431 F.3d at 1041

---

[2] Wilson also claims the district court erred by denying his oral request at sentencing that the government furnish the court with the criminal history reports of the witnesses listed in the presentence report. In denying the motion, the judge stated he was already familiar with the backgrounds of the witnesses. Determining the reliability of hearsay testimony at sentencing is firmly within the district court's discretion, *United States v. Garcia*, 66 F.3d 851, 858 (7th Cir. 1995), and we find no abuse of discretion here.

(vacating sentence because relevant drug conduct not sufficiently related).

The mere fact that Wilson engaged in drug transactions other than the one underlying his offense of conviction does not automatically make those transactions relevant conduct. *Ortiz*, 431 F.3d at 1041. Relevant conduct must be "part of the same course of conduct or common scheme as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Because the clear error standard also governs this inquiry, we begin with the district court's specific findings regarding whether the prior drug transactions were part of the same course of conduct or common scheme as Wilson's February 2004 drug deal. *Acosta*, 85 F.3d at 280. We have generally required the district court to explicitly state and support its finding that uncharged drug quantities are sufficiently related to the offense of conviction. *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005).

Here, neither the district court nor the presentence report writer explicitly used the phrases "same course of conduct" or "common scheme." But the court did find at sentencing that Wilson had been regularly dealing cocaine since his release from prison in 1998; that he was a part of an "ongoing circle of dealers" from whom he bought and sold during that time; and that he was a sophisticated dealer who typically trafficked in large quantities of cocaine. That the court failed to invoke the specific phraseology of U.S.S.G. § 1B1.3(a)(2) does not mean it failed to make the necessary finding. *See Acosta*, 85 F.3d at 280 (noting that even a failure to make *any* express findings does not necessarily preclude us from upholding a relevant conduct finding). The district judge plainly believed Wilson's uninterrupted, large-scale cocaine trafficking constituted both a "common scheme" and was part of the "same course of conduct" as his offense of conviction.

More specifically, to be a "common scheme," Wilson's offense of conviction and the uncharged conduct must "be substantially connected to each other by at least one common factor, such as common victims, common accomplices, [or] common purpose." U.S.S.G. § 1B1.3(a)(2) cmt. n.9(A). Because "Mike" sold Wilson the 488 grams leading to his conviction, Wilson's additional cocaine purchases from "Mike" (at least 1.125 kilograms since June 2003) involved a common accomplice and were properly deemed relevant conduct. *United States v. Delatorre*, 406 F.3d 863, 867 (7th Cir. 2005). Moreover, the record indicates Wilson planned on selling the 488 grams involved in the offense of conviction to McGee, the same dealer who admitted regularly brokering half-kilogram cocaine deals between Wilson and Cooper. McGee also said these Wilson-Cooper deals happened two to three times per week, though he never mentioned the date on which they commenced. That information was instead supplied by the confidential informant, who stated that Wilson began buying from Cooper upon his release from federal prison in 1998. Accordingly, the record establishes that McGee was a common accomplice in the large Wilson-Cooper transactions that had been regularly occurring since 1998. McGee's presence ties the Wilson-Cooper deals to the Wilson-"Mike" deals and shows a continuous and common scheme—or, as the district court put it, an "ongoing circle of dealers."

The Wilson-Cooper deals were also properly considered part of the "same course of conduct" as the 488-gram Wilson-"Mike" deal. Uncharged transactions are part of the same course of conduct as the offense of conviction if they are so related as to "warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2) cmt. n.9(B). Decisive factors include the "similarity of the offenses, the regularity (repetitions) of the offenses, and the interval between

the offenses." *Id.* Based in part on the Wilson-Cooper deals, the district court found that Wilson "was involved in dealing in cocaine from the time he was released from his prior sentence up until the time he was arrested." The court also found that Wilson regularly dealt in large quantities of cocaine during this period, whether obtained from Cooper or "Mike." Put another way, the court viewed the 488-gram sale Wilson was in the process of making in February 2004 as the latest in an unbroken series of large cocaine deals Wilson regularly made in the St. Louis area from 1998 until his arrest.

Accordingly, the district court did not clearly err in treating Wilson's prior cocaine transactions as relevant conduct for offense level purposes. It follows necessarily that the court also properly enhanced Wilson's criminal history category under U.S.S.G. § 4A1.1. That guidelines provision adds three criminal history points if the defendant committed the "instant offense" while on supervised release and within two years of release from imprisonment. U.S.S.G. § 4A1.1(d)-(e). Application note 4 makes clear that the "instant offense" includes relevant conduct, which in Wilson's case includes the large drug deals he made with Cooper that began upon Wilson's release from prison in 1998. Any deal Wilson made with Cooper in 1998 obviously occurred within two years of his release from prison and during his term of supervised release, which ran from 1998 to 2003.

Wilson's lone remaining challenge concerns his 2-level obstruction enhancement for recklessly endangering agents while attempting to flee the parking lot. The relevant guideline applies to any defendant who "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Wilson does not challenge the district court's finding that he recklessly endangered the agents by moving his car forward

and backward with the agents in close proximity. He instead argues that such minor vehicular movements cannot constitute intentional flight or attempted flight. We disagree, as a defendant need not be engaged in full-fledged flight for the guideline to apply. The application notes explain that reckless endangerment during flight is "to be construed broadly and includes preparation for flight." U.S.S.G. § 3C1.2 cmt. n.4.

The district court found that after seeing the first agent pull up behind him, Wilson drove his car forward but was stopped after a short distance because a second agent pulled in front of him and blocked his path. Hemmed in from the front, Wilson then put his car in reverse and backed up toward the first agent. The court held that "Wilson was attempting to flee these officers, and . . . he nearly struck or rammed their vehicles." The district court's findings, which were based on the credible testimony of one of the arresting agents and are not clearly erroneous, support the court's conclusion that Wilson was preparing to flee. The obstruction enhancement was properly applied.

AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*