In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-4185

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN WHITE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 03-CR-20092—**Michael P. McCuskey,** *Chief Judge.*

_____

ARGUED DECEMBER 7, 2007—DECIDED MARCH 5, 2008

_____

Before POSNER, ROVNER and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Juan White was convicted by a jury of distribution of 50 grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). During the trial, the district court allowed the government to introduce evidence that its main witness had cooperated in other cases in order to rehabilitate him, a ruling White now appeals. Following the trial, the district court sentenced White to 360 months of imprisonment. White also appeals this sentence. We affirm.

**I.**

In 2000, Juan White was the subject of a government drug investigation in Decatur, Illinois. Troy Fuller, who was similarly under investigation at that time, was arrested on drug charges in March 2000 and began cooperating with authorities. As Fuller previously had purchased powder cocaine from White, the police instructed Fuller to contact White and attempt to set up a controlled purchase of two ounces of crack cocaine. On August 27, 2000, White and Fuller agreed to meet at a car wash to complete the purchase. When White arrived a few minutes after Fuller (who was outfitted with a wire transmitter), he entered the backseat of Fuller's car and gave Fuller what was later determined to be 57.2 grams of crack. Fuller paid White $1800 and asked him whether he had any "soft" (meaning powder) cocaine. White responded that he was hoping to obtain some that night and to call him within the next few days.

More than three years later, on October 9, 2003, White was arrested for the August 2000 sale of crack to Fuller. At that time agents also seized a number of firearms. White was charged in an indictment (later superseded) with the August 2000 sale of crack as well as the October 2003 possession of a firearm by a felon. White pleaded guilty to the firearm charge and proceeded to a jury trial on the drug charge.

At the trial, Fuller, testifying on behalf of the government, recounted his August 2000 transaction with White and also told the jury that he was testifying pursuant to a plea agreement with the government in the hopes that his sentence would be reduced. On cross-examination, White's counsel attacked Fuller's credibility, focusing on the fact that Fuller was relying on the government to seek

to reduce what otherwise would be a mandatory minimum sentence. In light of this line of questions, the prosecutor requested that he be permitted to rehabilitate his witness with evidence concerning the cooperation Fuller had provided to the government in other cases. Following a hearing, the district court determined that White's "full frontal attack" on Fuller's credibility warranted the government's rehabilitation of Fuller. Tr. 374. The government then elicited testimony from an FBI agent describing three other drug cases in which Fuller had cooperated: one in which Fuller's information led to the seizure and forfeiture of $16,000 and two others which resulted in guilty pleas. Both at the time this evidence was introduced and again when he was charging the jury at the close of the case, the district judge instructed the jurors that this evidence was admitted only for purposes of evaluating Fuller's credibility and not as evidence against White. The jury, as we have mentioned, convicted White on the drug distribution charge.

White's conviction for distributing more than 50 grams of crack cocaine, coupled with a prior felony drug conviction, required a sentence of between 20 years and life in prison. 21 U.S.C. § 841(b)(1)(A)(iii). Within that statutory range, the sentence recommended by the Sentencing Guidelines turned in large part on the quantity of drugs underlying White's offense. The presentence report ("PSR") held White accountable not only for the 57.2 grams of crack cocaine that he sold to Fuller in August 2000, but also for ten additional sales of crack and powder cocaine to Fuller and two others, Frederick Porter and Jeremiah Young, between 1994 and 2003. Those additional sales were treated as relevant conduct. *See* U.S.S.G § 1B1.3(a)(2) and comment n.3. In total, the PSR

held White accountable for 68.65 kilograms of powder cocaine and 3.37 kilograms of crack, resulting in a base level offense of 38.[1] White objected not only to the PSR's drug calculation, but also to the "deliberate nature of the sting operation" which, according to White, unfairly resulted in the triggering of the mandatory sentencing provisions of 21 U.S.C. § 841(b)(1)(A)(iii). To resolve these issues, the district court held a number of sentencing hearings during which Porter and Young, among others, testified. At the conclusion of these hearings the court determined that the agents' direction to Fuller to purchase the two ounces of crack was neither sentence entrapment nor sentence manipulation and that the drug sales as presented in the PSR were properly attributable to White as part of the same course of conduct as the offense of conviction. Adopting the recommendations of the PSR, the court found the advisory guidelines range to be 360 months to life and, after hearing both the government's recommendations and White's arguments as to an appropriate sentence, the court sentenced White to 360 months' imprisonment.[2]

## II.

### A.

White first contests the district court's ruling which allowed the government to introduce evidence of Fuller's

---

[1] White received a three-level enhancement for his managerial role which he does not challenge. His total offense level at the time of his sentencing, then, was 41.

[2] White was also sentenced to a concurrent 120 month term on the firearm charge.

cooperation in other cases in order to rehabilitate him as its witness.[3] We review a district court's admission of evidence for abuse of discretion. *E.g.*, *United States v. Bonner*, 302 F.3d 776, 780 (7th Cir. 2002). We find there was no such abuse here and consequently we affirm the lower court's ruling.

This Circuit previously has established that a witness whose credibility has been attacked may be rehabilitated (*e.g.*, *United States v. Lindemann*, 85 F.3d 1232, 1242-43 (7th Cir. 1996)), and where, as here, it is a government witness who is portrayed as biased in favor of the government, evidence of that witness's cooperation in other cases may be admitted for that purpose. *E.g.*, *United States v. Henderson*, 337 F.3d 914, 919 (7th Cir. 2003); *United States v. Scott*, 267 F.3d 729, 735-37 (7th Cir. 2001). When cross-examining Fuller, White's counsel attempted to suggest that Fuller's desire for government leniency in the pending case against him made it likely that he was lying about his transaction with White in order to curry favor with the government. Without the evidence later introduced by the government that Fuller had cooperated in other successful cases, the "jury might have believed that [Fuller's] plea deal rested solely on [White's] case,

---

[3] In addition to the brief filed by White's counsel, we allowed White to file his own supplemental brief to address two discrete issues: this one, and the question of whether the court improperly denied him an entrapment defense. (Order, July 16, 2007.) In his *pro se* brief, White does not tackle the latter at all but does raise three other issues well outside the scope of the Court's order. Of the arguments raised in White's supplemental brief, therefore, we consider only the question of Fuller's rehabilitation.

thereby making a motive to frame [White] all the more reasonable." *Henderson*, 337 F.3d at 919. The government's evidence of Fuller's other cooperation was relevant because it made the jury aware that Fuller had other, "multiple bargaining chips" vis-à-vis the government, making it less likely that he was lying in this case out of self-interest. *See Scott*, 267 F.3d at 736. In addition, the court's admonitions to the jury about considering this evidence only insofar as it related to Fuller's credibility further served to mitigate any potential for unfairness to White. *Id.*

**B.**

White also argues that the government's specific instruction to Fuller to buy two ounces of crack from him, an amount of the drug that triggers a mandatory minimum sentence under the 21 U.S.C., § 841(b)(1)(A)(iii) (in this case 20 years with a prior felony drug conviction), was so "outrageous" that White's rights clearly were violated. The fundamental unfairness arises, White theorizes, from the fact that the police "chose a substance and an amount with the express purpose of manipulating the mandatory sentencing provisions….." This broad, nebulous argument is without merit. First, this circuit clearly and consistently has refused to recognize any defense based on either "sentencing manipulation" or on asserting "outrageous government conduct." *See United States v. Veazey*, 491 F.3d 700, 710 (7th Cir. 2007) (no defense of sentencing manipulation) (coll. cases); *United States v. Sherman*, 268 F.3d 539, 549 (7th Cir. 2001) ("outrageous government conduct" is not a recognizable defense) (citing

*United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995)).[4] Although this might potentially leave White with an argument of "sentencing entrapment," White himself acknowledges that the government's actions do "not necessarily qualify as sentence entrapment or sentence manipulation….." (White Br. at 13.) Regardless, even if White *had* cogently made the argument of sentence entrapment, no such finding is warranted here.

Sentencing entrapment occurs in situations when a defendant who lacks a predisposition to engage in more serious crimes nevertheless does so "as a result of 'unrelenting government persistence.'" *Veazey*, 491 F.3d at 710 (quoting *United States v. Hale*, 448 F.3d 971, 989 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1020 (2007)). To overcome this argument, the government need not explain or defend its motives, but must show only that the defendant was in fact predisposed to violate the law without "extraordinary inducements." *Id.*

Here the evidence reveals that White clearly was predisposed to distribute crack: White admitted to selling both cocaine powder and crack to various customers; there was testimony from other drug purchasers that White engaged in multiple, individual sales of large quantities of crack; and Fuller did not offer White any "extraordinary inducements" whatsoever to make the sale. In spite of the fact that the purchase was a departure from Fuller's previous buying patterns with White, the fact that White, a drug dealer with a history of dealing

---

[4] White spends a good part of his brief attempting to sway this Court with arguments in favor of these theories accepted by other Circuits, to no avail.

crack, readily acceded to Fuller's request undercuts any possible theory of sentence entrapment in this case. We affirm the district court's ruling on this issue.

## C.

Finally, White appeals from the district court's calculation of the quantity of drugs involved in his offense, claiming that it was improper to hold him accountable for ten additional drug transactions over a nine-year period, the inclusions of which increased White's offense level from 32 to 38 and effectively nearly doubled the sentencing range. We review the lower court's calculations for clear error. *United States v. Olson*, 450 F.3d 655, 685 (7th Cir. 2006).

Section 1B1.3(a)(2) of the Guidelines provides that all acts and omissions that were "part of the same course of conduct or common scheme or plan as the offense of conviction" should be considered "relevant conduct" for sentencing purposes. Conduct that qualifies as relevant is factored into the Guidelines' sentencing calculations as if the defendant had been convicted of that conduct, even though the defendant was neither charged nor convicted of the additional crime or crimes. *E.g.*, *United States v. Artley*, 489 F.3d 813, 822 (7th Cir.), *cert. denied*, 128 F.3d 415 (2007). The critical inquiry is whether the offenses are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2), comment n.9(B). In making this determination, the court may look to the "similarity of the offenses, the regularity (repetitions) of the offenses, and the interval between the offenses." *Id.* Relevant conduct must

be established by a preponderance of the evidence. *United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003).

We have noted that the relevant conduct or "aggregation rule" grants the government a "fearsome tool" in drug cases by allowing prosecutors to seek enhanced sentences by asking the sentencing court to consider types and quantities of drugs not specified in the counts of conviction. *See United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005) (citing *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir. 1991)). *See also United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996) ("The determination that an uncharged drug transaction is to provide the basis for an increased sentence of imprisonment is, of course, a very significant matter."). Yet we have also sustained its propriety repeatedly, holding that so long as it was based on reliable evidence, the determination of drug quantity "is a factual determination entitled to our deference unless we have a definite and firm conviction that a mistake has been made." *United States v. Wilson*, 502 F.3d 718, 721 (7th Cir. 2007) (internal quotation omitted). In this case the district court conducted extensive hearings, evaluated the credibility of witnesses, heard and reviewed considerable, reliable evidence and made specific findings about the similarity, regularity and temporal proximity of the offenses. We have no basis whatsoever to say its findings are clearly erroneous. *See Olson*, 450 F.3d at 685 (sentencing judge is best situated to determine the credibility of witnesses and such conclusions will not be disturbed unless they are wholly without foundation).

White argues that the other drug sales cannot be deemed relevant conduct for three reasons: those drug sales which are "removed by years" from the offense of convic-

tion are too remote to be deemed relevant conduct; there is no proof of a relationship between Fuller, Porter and Young; and most of the non-charged drug sales involved powder cocaine whereas the offense in question involved crack. We are not persuaded by any of these arguments.[5]

White's time-gap argument is hollow. It is true that in certain circumstances, gaps of time between an offense and the charged offense may suggest that the behavior is not part of the same course of conduct. *See*, *e.g. United States v. Sykes*, 7 F.3d 1331, 1337 (7th Cir. 1993). Here, however, the evidence shows that there were no such gaps—White's drug trafficking was more or less consistent over the nine-year period in question. Although the government did not show that White regularly distributed to any *single* buyer, White's own admission that from 1997 to 2002 he obtained one-half kilogram quantities of powder cocaine for resale, twice a week, shows that White's drug distribution in general was regular and steady. In addition, Fuller's, Porter's and Young's testimony, when taken together, shows a continuous pattern of drug trafficking. For purposes of the aggregation rule, then, we cannot say that the lower court erred when it concluded that there was sufficient temporal proximity between the offenses for relevant conduct purposes.

---

[5] The lower court concluded both that a "common scheme or plan existed" *and* that the uncharged conduct involved the "same course of conduct" as that involved in White's conviction. Because a positive finding under either prong is sufficient for the aggregation rule and because we affirm the district court's ruling on the basis of the "course of conduct" prong, we do not reach the question of whether the behavior at issue constituted a "common plan or scheme" under the statute.

White's argument that Fuller, Porter and Young did not necessarily have relationships with each other is similarly unavailing. White's argument would be more on point if the relevant conduct determination here turned on whether the additional transactions were part of a common scheme or plan among multiple individuals. *See* n.5. But the unifying factor here is White and his unbroken series of sales to lower level drug sellers in Decatur. As a result, the lack of a relationship between White's purchasers becomes irrelevant. Relying in part on White's statement that he was the largest drug dealer in Decatur, the court below found that the transactions with Fuller, Porter and Young were similar, all part and parcel of White's significant distribution of drugs to dealers in Decatur for redistribution. Again, there is nothing to suggest this was clear error on the court's part. *See Wilson*, 502 F.3d at 724 (no clear error where the district court viewed the large drug sale which was the basis for the defendant's arrest as "the latest in an unbroken series of large cocaine deals [the defendant] regularly made in the St. Louis area from 1998 until his arrest [in 2004]").

Turning to White's argument that the offense of conviction involved crack, a drug different from the powder cocaine involved in many of the other offenses, we find this distinction to be immaterial here. There is no question that non-charged offenses need not involve the same type of drug as the offense of conviction to be considered relevant conduct. *See*, *e.g.*, *United States v. Acosta*, 85 F.3d 275, 281 (7th Cir. 1996) (weekly cocaine sales predating arrest on heroin charge constituted relevant conduct for sentencing purposes where the court found regulatory, temporal and geographic proximity of the offenses); *United States v. Sumner*, 325 F.3d 884, 890 (7th Cir. 2003) (sales of

crack cocaine included in relevant conduct although powder cocaine was the drug involved in the conviction). The district court found that, during his normal course of "business," White bought and sold both crack and powder cocaine, distributing both drugs to dealers in Decatur. As such, including the non-charged powder cocaine transactions as relevant conduct for sentencing is more than defensible and certainly does not constitute clear error.

Lastly, just days after we heard oral argument in this case, the Supreme Court handed down *Kimbrough v. United States*, 128 S. Ct. 558 (2007), clarifying that sentencing courts may, in their discretion, consider the crack/powder cocaine disparity in imposing sentences outside the Guidelines' range. This prompted us to request supplemental briefing in this case on whether remand would be appropriate here. After consideration, we agree with the government that such remand is unnecessary given the lower court's firm statement that it would have imposed the same sentence even if there were no Guidelines, thus making clear that the crack/powder disparity reflected in the Guidelines in no way affected the court's sentencing decision.[6]

---

[6] This approach is entirely consistent with the one we took in the wake of *United States v. Booker*, 543 U.S. 220 (2005), pursuant to which we declined to ordered even limited remands if the sentencing record made clear that the court's sentence would not change even in view of the more ample discretion afforded the court under *Booker*. *See, e.g., United States v. Julian*, 427 F.3d 471, 491 (7th Cir. 2005) (citing *United States v. Paladino*, 401 F.3d 471, 482-83 (7th Cir. 2005)).

## III.

For the foregoing reasons, the district court's judgment is AFFIRMED.