In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2468

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO VICTOR LOMAX,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 419-1—**Ronald A. Guzmán**, *Judge*.

SUBMITTED FEBRUARY 25, 2013[*]—DECIDED APRIL 2, 2013

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges*.

PER CURIAM. Mario Victor Lomax pleaded guilty in
2008 to one count of distributing crack cocaine. *See* 21
U.S.C. § 841(a)(1). By the time he was sentenced in 2011,
Congress had enacted the Fair Sentencing Act of 2010

[*] After examining the briefs and record, we have concluded
that oral argument is unnecessary. Thus, the appeal is submit-
ted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

("FSA"), Pub L. No. 111-220, 124 Stat. 2372, which increased the threshold amounts of crack that will trigger enhanced statutory penalties under § 841(b)(1). (The parties do not say, and neither does the record disclose, why this prosecution languished; Lomax pleaded guilty more than three years after his arrest and was sentenced nearly three years after that.) Lomax argued that his sentence should reflect the FSA's lesser penalties, and also that the district court should exclude some of his other drug sales in calculating the drug quantity for purposes of applying the sentencing guidelines. *See* U.S.S.G. § 2D1.1. The court rejected both arguments, but still imposed a below-guidelines sentence of 188 months.

On appeal Lomax argues, and the government agrees, that the case should be remanded for resentencing under the FSA, which applies to all crack offenders sentenced after its enactment. *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012). The parties and the district judge all assumed that applying the FSA to Lomax would lower his guidelines imprisonment range, but the court understandably declined to apply the FSA because of contrary circuit precedent later rejected by *Dorsey*. *See United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011). We now know that the court's reasoning was mistaken, and on the existing record we cannot say that the error was harmless.

The record is incomplete, however, and that gap complicates our analysis. The offense of conviction involved slightly more than 50 grams of crack, which

before the FSA meant a possible sentence of life in prison. After the FSA, that same amount of crack can lead to 40 years in prison, though not life. *Compare* 21 U.S.C. § 841(b)(1)(A)(iii) (2000) *with id*. § 841(b)(1)(B)(iii) (2006 & Supp. IV 2010). Yet this difference between life imprisonment and 40 years assumes that drug quantity is the only enhancing factor in play, and that assumption may be wrong. Lomax pled guilty after the government had filed a recidivism enhancement under 21 U.S.C. § 851, which would increase the applicable statutory penalties based on his prior conviction for a felony drug offense. Before the FSA's passage, a § 851 enhancement would have prompted a statutory imprisonment range of 20 years to life for a defendant who distributed 50 or more grams of crack; after the FSA the same defendant would face a minimum of 10 years instead of 20, but the maximum would remain life. *Compare* 21 U.S.C. § 841(b)(1)(A)(iii) (2000) *with id*. § 841(b)(1)(B)(iii) (2006 & Supp. IV 2010). At sentencing, the parties, the probation officer, and the district court said nothing about the recidivism enhancement and took the stance, premised on the drug quantity alone, that the applicable pre-FSA statutory sentencing range was 10 years to life. The record doesn't disclose the basis for this view: The parties never executed a plea agreement, and there is no entry on the docket dismissing the § 851 enhancement. Possibly it was withdrawn during the plea colloquy (the parties have not supplied a transcript) or simply forgotten as the case aged.

Given the incomplete record and the parties' silence on the subject, we infer (for this appeal only) that the

§ 851 enhancement did not apply to Lomax and thus the FSA capped his potential prison term at 40 years. The sentence he received is far short of 40 years or life. But the difference between these maximum sentences is significant because Lomax is a career offender, *see* U.S.S.G. § 4B1.1, and that guideline is tied to the statutory maximum for the offense of conviction. The maximum penalty of life imprisonment used in calculating Lomax's guidelines range corresponded to a total offense level of 34 (after a reduction for acceptance of responsibility). The district court used that number because it exceeds the total offense level of 33 which otherwise would have applied given the court's drug-quantity finding. *See* U.S.S.G. § 4B1.1(b); *United States v. Williams*, 694 F.3d 917, 918 (7th Cir. 2012). In contrast, a maximum of 40 years yields a total offense level of 31 under the career-offender guideline (after a reduction for acceptance of responsibility), and though the alternative drug-quantity-based calculation of 33 is now higher and will supplant the career offender offense level, *see* U.S.S.G. § 4B1.1(b), a total of 33 is still lower than the 34 used at sentencing. Lomax's criminal history is Category VI, so a one-level drop lowers his guidelines imprisonment range appreciably: Previously the imprisonment range was 262 to 327 months; now it is 235 to 293 months. The government does not argue that the district court would have imposed the same prison term using the correctly calculated guidelines range, and thus we must vacate Lomax's sentence and remand the case to the district court. *See United States v. Love*, 680 F.3d 994, 997-98 (7th Cir. 2012).

Lomax presses a second argument, which he believes will lower the guidelines range even more. In calculating a total offense level of 33 based on the quantity of drugs rather than the career-offender guideline, the district court included enough transactions involving powder or crack cocaine to yield a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2). Lomax had twice sold more than 50 grams of crack to an informant in August 2004, and he pled guilty to one of those distributions. He also confessed to federal agents that he regularly sold powder cocaine and crack between late 2003 and the date of his arrest in the fall of 2004. He explained that he bought cocaine from a supplier several times each month, cooked some of it into crack which he sold in the Chicago area, and sent the rest to a dealer in Springfield, Illinois. Lomax estimated for the agents the amounts of powder and crack cocaine that he distributed each week, from which the court calculated a total of 4.5 kilograms of crack and the same amount of powder. Lomax concedes that the two sales to the informant in August 2004 must count in the drug quantity, but his other drug transactions, he insists, were not relevant conduct and should have been ignored. He distinguishes the count of conviction, which involved a crack sale in Chicago, from other transactions, some of them occurring in Springfield or involving different suppliers or powder cocaine.

These distinctions do not justify overturning the district court's assessment of drug quantity. Lomax's crack distributions occurred in Chicago, and since the weight of the crack by itself is enough to sustain a base

offense level of 36 (the threshold is 2.8 kilograms, *see* U.S.S.G. § 2D1.1(c)(2)), we do not need to concern ourselves with the leftover powder or events in Springfield. More importantly, drug quantity includes relevant conduct, *see* U.S.S.G. § 2D.1.1 cmt. n.5, which comprises all acts "that were part of the same course of conduct . . . as the offense of conviction," in particular acts that are part of an "ongoing series of offenses." *See* U.S.S.G. § 1B1.3(a)(2) & cmt. n.9(B). By his own admission, Lomax regularly sold both crack and powder cocaine in two Illinois localities for the brief, unbroken period of time between late 2003 and the fall of 2004. The fact that Lomax had two different suppliers during this period is irrelevant: The offense of conviction was part of a "continuous pattern of drug trafficking," and thus the sentencing court properly counted Lomax's uncharged sales as relevant conduct. *United States v. Stephenson*, 557 F.3d 449, 457 (7th Cir. 2009); *see also United States v. Farmer*, 543 F.3d 363, 373 (7th Cir. 2008); *United States v. White*, 519 F.3d 342, 347-49 (7th Cir. 2008); *United States v. Wilson*, 502 F.3d 718, 723-24 (7th Cir. 2007).

Accordingly, we VACATE Lomax's sentence and REMAND the case to the district court. On remand the judge must first resolve whether Lomax is subject to the § 851 enhancement.